THE STATE, EX REL. DURELL, ET AL., APPELLANTS, *v.*
CELEBREZZE, JR., SECY. OF STATE, ET AL., APPELLEES.

[Cite as State, ex rel. Durell, v. Celebrezze, Jr. (1979),
63 Ohio App. 2d 125.]

(No. 79AP-90—Decided March 27, 1979.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Herbert R.
Brown* and *Mr. John C. Elam,* for appellants.

*Mr. William J. Brown,* attorney general, and *Mr. Thomas
V. Martin,* for appellee, Anthony J. Celebrezze, Jr., secretary
of state.

*Messrs. Clayman & Jaffy* and *Mr. Stewart R. Jaffy,* for
intervenor-appellee, Committee for Petitioners.

WHITESIDE, J.    Plaintiffs appeal from a judgment of the
Franklin County Court of Common Pleas denying them in-
junctive relief and raise three assignments of error, as follows:

1. "The trial court erred in refusing to enjoin defendant
because the November initiative petition violated the man-
datory requirements of R. C. 3519.01 since it was not propos-
ed by 100 qualified electors."

2. "The trial court erred in refusing to enjoin defendant
because the proposed initiative relates to a subject matter pro-

hibited as a matter of the initiative process by Article II, § 1(e) of the Ohio Constitution."

3. "The trial court erred in refusing to enjoin defendant because the proposed initiative violates Article XII, § 2 of the Ohio Constitution."

On October 31, 1978, a proposed initiative petition bearing more than 100 signatures of allegedly qualified electors was submitted to the Attorney General pursuant to R. C. 3519.01. Finding discrepancies and inconsistencies, the Attorney General returned this petition to the Committee for Petitioners, rather than submitting it to the Secretary of State. On November 7, 1978, a new proposed initiative petition which bore no signators was submitted to the Attorney General by the Committee for Petitioners. Changes in the second proposed petition from the first included both changes in the text of the proposed law, as well as changes in the summary.

The Attorney General determined that the summary submitted with the second proposed initiative petition constituted a fair and truthful summary of the text and issued a certification pursuant to R. C. 3519.01 on November 9, 1978, and transmitted a copy of the text and summary together with a letter of certification to the Secretary of State, attaching thereto a xerographic copy of the signatures which had been attached to the first proposed petition. Thereafter, a solicitation of signatures on part-petitions was commenced and, on December 22, 1978, part-petitions containing over 92,000 signatures were submitted to the Secretary of State.

Thereafter, plaintiffs brought this action in the Franklin County Court of Common Pleas attempting to enjoin the Secretary of State from completing the performance of his duties with respect to the initiative part-petitions and from transmitting the petitions to the General Assembly. The Common Pleas Court denied the injunction, resulting in this appeal.

Plaintiffs' first contention is that the entire initiative proceedings to date is a nullity and should be enjoined because the second proposed initiative petition filed with the Attorney General did not contain any signators. R. C. 3519.01 provides, as follows:

"Whoever seeks to propose a law or constitutional amendment by initiative petition or to file a referendum petition

against any law, section, or item in any law shall by a written petition signed by one hundred qualified electors submit such proposed law, constitutional amendment, or measure to be referred and a summary of it to the attorney general for examination. If in the opinion of the attorney general the summary is a fair and truthful statement of the proposed law, constitutional amendment, or measure to be referred, he shall so certify. A verified copy of the proposed law, constitutional amendment, or the law, section, or item to be referred, together with the summary and the attorney general's certification, shall then be filed with the secretary of state."

The defendant Secretary of State contends that R. C. 3519.01 has not been violated and that that section must be interpreted in a manner to facilitate, rather than restrict, the right of initiative. Accordingly, defendant contends that the signators to the first proposed petition may also be considered signators to the second. The intervening defendant, the Committee for Petitioners, makes a similar contention, pointing out that the requirement of signators is for the purpose of indicating to the Attorney General that there is an interest in proceeding with the obtaining of signators to the initiative petition itself. They also contend that the original signators may be considered to be the signators to the second initiative petition and that the Committee is authorized to make the changes that were made pursuant to R. C. 3519.02. The trial court predicated its decision upon that section, as well as upon the contention of defendant and intervening defendant that the signators to the first petition can also be considered signators to the second since the proceedings were "one continuing process."

We find that the trial court erred in these respects. R. C. 3519.02 by its very terms does not apply to the preliminary proceedings before the Attorney General required by R. C. 3519.01. The "written petition" which must be signed by 100 qualified electors pursuant to R. C. 3519.01 is not an initiative petition but, rather, is a preliminary petition submitted to the Attorney General prior to circulation of the initiative petition, which is required by R. C. 3519.02 to set forth the committee. R. C. 3519.01 does not require that a copy of the initiative petition be submitted to the Attorney General but, rather, only that the proposed law and a summary of it be so submitted for

examination. There is no requirement that a committee be appointed with respect to the petition to the Attorney General pursuant to R. C. 3519.01, and R. C. 3519.02 by its terms applies only to "any initiative, referendum, or supplementary petition." Accordingly, that section has no application to the petition to the Attorney General pursuant to R. C. 3519.01.

The trial court also erred in finding that the process is one continuing process and that no signators were required with respect to the second petition. In effect, the Attorney General rejected the first petition submitted to him. Rather than rejecting the second because of lack of signators, the Attorney General approved it and certified it to the Secretary of State. Under prior law, the Secretary of State then prescribed the initiative petition to be used, but under present law he has no duties to perform, the form of the petition being controlled strictly by R. C. 3519.05.

Defendant and intervening defendant indirectly and implicitly contend that that part of R. C. 3519.01 which requires signators may be unconstitutional, and at least, should be so interpreted, so as to avoid any possibility of constitutional conflict. Section 1(b), Article II, Ohio Constitution, provides, in part:

"When at any time, not less than ten days prior to the commencement of any session of the general assembly, there shall have been filed with the secretary of state a petition signed by three per centum of the electors and verified as herein provided, proposing a law, the full text of which shall have been set forth in such petition, the secretary of state shall transmit the same to the general assembly as soon as it convenes.***"

The Constitution goes on to provide that the General Assembly may pass the proposed law either in the form submitted or in an amended form, or may reject the law in its entirety. If the General Assembly rejects the proposed law, or passes it in an amended form, or fails to act within four months after it is submitted, upon the filing of a supplementary petition signed by three percent of the electors, in addition to those signing the original petition, the Secretary of State shall submit the issue to the electorate at the next regular or general election. Section 1(g), Article II, Ohio Constitution, sets forth the specific requirements for initiative

petitions in some detail. That section further provides, in part:

"***The foregoing provisions of this section shall be self-executing, except as herein otherwise provided. Laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions or the powers herein reserved."

Defendants contend that *State, ex rel. Tulley,* v. *Brown* (1972), 29 Ohio St. 2d 235, supports their position as to the interpretation and application of R. C. 3519.01. In that case, the majority of the Supreme Court refused to consider the constitutionality of the section because it had not been raised and granted a writ of *mandamus* compelling the Attorney General to proceed with certification in accordance with the statute. One judge dissented upon the basis that the court should exercise its discretion not to grant the writ since the constitutional issue had not been adequately presented. A second judge dissented, expressly finding that R. C. 3519.01 is unconstitutional on its face because of the provision for a summary of the proposed law not contained in the Constitution. The issue of the necessity of signators, assuming that the section is otherwise constitutional, was not discussed. Rather, it was the very existence of the summary that caused concern. The dissenting opinion in *Tulley* would tend to support plaintiffs' position, rather than that of defendants, since it was the inclusion of the summary in the initiative petitions that was found to be inconsistent with the constitutional requirements by the dissenting judge.

Similarly, in *State, ex rel. Barren,* v. *Brown* (1977), 51 Ohio St. 2d 169, the majority of the Supreme Court granted a writ of *mandamus* requiring the Attorney General to certify a summary with respect to a referendum petition but without deciding or discussing the constitutional issue, with two judges dissenting upon the grounds that the question was moot.

Under the circumstances herein, we find that it can only be concluded that the petitioners failed to comply fully with R. C. 3519.01, and that the Attorney General probably should not have certified the summary since no signators were included with the petition. Like the Supreme Court, however, we feel it unnecessary to resolve the issue as to whether or not the requirements of R. C. 3519.01, including those requiring that a written petition be filed with the Attorney General, are con-

stitutional, inasmuch as, even if such section is constitutional, the error of the Attorney General in failing to require strict compliance with the provisions of the statute does not at this stage vitiate the subsequent proceedings.

It may well be that the Attorney General could have refused to certify the summary upon the grounds that the signators were not sufficient. However, by acting, the Attorney General in effect determined that there were signators to the petition sufficient to cause him to act pursuant to R. C. 3519.01. He erred in this determination, but such error does not render all subsequent proceedings void. After the Attorney General issued his certification, the appropriate filings were made with the Secretary of State, the part-petitions were circulated and completed petitions containing over 92,000 signatures were filed with the Secretary of State.

It would be an absurd result to conclude that all this action, in full accord with constitutional requirements, should be completely vitiated because of the alleged error of the Attorney General in proceeding with certification without a sufficient petition.

The purpose of R. C. 3519.01 is to assure that the summary of the proposed law constitutes "a fair and truthful statement of the proposed law." This purpose has been served, even though in a procedurally defective manner. With respect to an injunction action, the Common Pleas Court serves as a court of equity. It would indeed be inequitable to vitiate the efforts of all those who acted in reliance upon the Attorney General's action by either circulating or signing the initiative petition merely because of the procedural error of the Attorney General in proceeding without a sufficient petition being before him. We cannot find such noncompliance with R. C. 3519.01 to be of such sufficient magnitude as to deny the petitioners the rights conferred by the Constitution where all constitutional requirements have been met. Strictly speaking, the statutory procedure under R. C. 3519.01 is not part of the initiative process but is a statutory requirement prior to commencement of the initiative process under the Constitution. The statutory process is complete upon the certification by the Attorney General that the summary is accurate. It is at this point that the constitutional initiative process commences.

We need not determine whether or not the certification by the Attorney General is a necessary requisite to proceeding with the constitutional initiative process since the Attorney General has made his certification. However, we do find that once certification is made by the Attorney General pursuant to R. C. 3519.01, any procedural defect in the proceedings under that section does not affect the validity of the subsequent constitutional initiative process. Accordingly, the first assignment of error is not well taken.

The second and third assignments of error raise constitutional issues. By the third assignment of error, plaintiffs contend that the law proposed by the initiative petition violates Section 2, Article XII, of the Ohio Constitution. Whether the proposed law does in fact violate that constitutional provision is at least debatable. However, it has been consistently held that the mere fact that a proposed law may be unconstitutional does not justify judicial interference in the legislative process, whether it be by act of the legislature or by act of the people. *Pfeifer* v. *Graves* (1913), 88 Ohio St. 473; *Weinland* v. *Fulton* (1918), 99 Ohio St. 10; *State, ex rel. Marcolin,* v. *Smith* (1922), 105 Ohio St. 570; *State, ex rel. Kittel,* v. *Bigelow* (1941), 138 Ohio St. 497; and *State, ex rel. Slemmer,* v. *Brown* (1973), 34 Ohio App. 2d 27.

The trial court found that no relief should be granted because the Secretary of State had no power to determine constitutionality. However, the issue is not the power of the Secretary of State, it is the power of the Common Pleas Court. The issue is the application of the fifth paragraph of the syllabus of *Pfeifer, supra,* which states:

"This court has no authority to pronounce an opinion, a judgment or a decree upon a mere moot question as to whether a proposed law will conflict with the Constitution, if it shall be enacted by the general assembly, or be adopted by the people."

More recently, the Supreme Court followed *Pfeifer* in *State, ex rel. Williams,* v. *Brown* (1977), 52 Ohio St. 2d 13, stating, at page 17, with respect to a proposed constitutional amendment: "***Nor may this court consider, as urged by relator, the constitutional validity of the proposed amendment." Similarly, the Common Pleas Court was precluded from considering the constitutional validity of the

proposed law herein involved. Likewise, this court as a reviewing court is similarly precluded from considering the constitutional validity of the proposed law. For this reason, the third assignment of error is not well taken.

The second assignment of error raises a different constitutional issue than that involved in *Pfeifer* or in *Williams,* or in any of the other cases above cited. The issue raised by the second assignment of error is more analogous to the issue determined in *State, ex rel. Riffe,* v. *Brown* (1977), 51 Ohio St. 2d 149, than that involved in *Pfeifer* and its progeny. In *Riffe,* the Supreme Court determined a constitutional issue in ruling that a particular act of the legislature was not subject to a referendum and, accordingly, issued a writ of *mandamus* to require the Secretary of State to declare that the act involved had taken immediate effect.

Similarly, by the second assignment of error, plaintiffs contend that the proposed law is not one that can be proposed by initiative petition in light of the prohibition of Section 1(e), Article II, of the Ohio Constitution, providing that:

"The powers defined herein as the 'initiative' and 'referendum' shall not be used to pass a law authorizing any classification of property for the purpose of levying different rates of taxation thereon or of authorizing the levy of any single tax on land or land values or land sites at a higher rate or by a different rule than is or may be applied to improvements thereon or to personal property." (Adopted September 3, 1912.)

A review of the record on appeal and consideration of the proposed amendment clearly indicates that it is at best debatable as to whether the proposed law, in part, constitutes an enactment which Section 1(e) clearly proscribes from being enacted by the initiative process. Although defendants do not concede that any part of the law constitutes an enactment proscribed by Section 1(e), plaintiffs apparently concede that parts of the proposed law, if separately submitted, would not constitute enactments proscribed by Section 1(e).

In *Riffe, supra,* the Supreme Court for effective date and referendum purposes held that an act of the General Assembly must be considered as an entirety, and, if any portion thereof is required to go into immediate effect and not be subject to referendum, the entire act takes immediate effect and is not subject to referendum.

Plaintiffs make a similar contention with respect to an initiative law. However, at this stage, the proposed law is not being submitted to the people for adoption by the initiative process but, rather, is only being proposed to the General Assembly. The actual action proscribed by Section 1(e) cannot take place until a supplementary petition is filed and only if the General Assembly rejects or fails to act upon the proposed law. The General Assembly itself is in a position initially to determine the constitutionality of the various provisions of the proposed law. The General Assembly may refuse to pass those provisions which it finds unconstitutional, as well as those provisions which it finds to be undesirable. It is difficult to see how any resolution of the issue is necessary until such time as the supplementary petitions are filed. The issue may well be rendered moot by action of the General Assembly, or by nonaction of the electors by failing to file a supplemental petition. Section 1(e) provides that the initiative "shall not be used to pass a law," and does not directly provide that the process may not be used to propose the law, which is the first step in the initiative process whereby the petitions propose the law to the General Assembly, which may or may not pass the law. It is only in the second step of the initiative process that initiative is used to *pass* a law.

The alleged constitutional infirmity may well be corrected prior to any submission of the proposal to the electorate for passage, inasmuch as Section 1(b), Article II, of the Ohio Constitution, provides, in part:

"***The proposed law shall be submitted in the form demanded by such supplementary petition, which form shall be either as first petitioned for or with any amendment or amendments which may have been incorporated therein by either branch or by both branches, of the general assembly.***"

Accordingly, even assuming there to be a potential violation of Section 1(e) of Article II, it is premature for any court to act thereon, even assuming it to be proper for a court to do so prior to passage of the proposal by the electors. Other methods are available to correct the constitutional infirmity if it exists, which may be pursued by the plaintiffs in the interim, seeking action by the General Assembly, or one branch thereof, to correct the alleged infirmity. Since the trial court could not have known in what form the proposal would finally be submitted to the electorate, it would have been improper to

enjoin the proceedings. Likewise, it would be inappropriate for this court to render an advisory opinion upon the constitutional issue, even though it be clearly justiciable.

In short, plaintiffs' claim for relief has not yet arisen if it ever will arise. At this juncture, it is pure speculation as to whether any issue will ever be submitted to the electorate and especially whether an issue inconsistent with Section 1(e) of Article II will be attempted to be submitted. At the appropriate time, plaintiffs have a remedy of seeking appropriate relief, but that time has not yet arrived. Accordingly, the second assignment of error is not well taken.

For the foregoing reasons, all three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

McCormac and Moyer, JJ., concur.

Moyer, J., concurring.   While I agree that the purpose of R. C. 3519.01 has been served in a procedurally defective manner, it is important to emphasize that the law proposed in the second petition submitted to the Attorney General, pursuant to R. C. 3519.01, was substantially and substantively different from the proposed law in the first petition. It seems apparent that the "proposers" and the Attorney General looked upon the process required by R. C. 3519.01 as a continuing process in which changes may be made on a second petition without submitting even a copy of the names of the original 100 signators to the first petition. Our decision in this case should not prohibit such a process where modifications to either the law or the summary in a petition submitted to the Attorney General, pursuant to R. C. 3519.01, are not so substantial as to require 100 electors to petition for the modified or revised proposed law. There may be instances in which some changes can be made, or in which the proposers and the Attorney General's office develop a summary that eliminates objections raised by the Attorney General, without violating the purpose for the requirement of 100 signators. Such a process does not violate the purpose of R. C. 3519.01, and it facilitates, rather than obstructs, the people's constitutional right to initiate statutes.

For these reasons, I concur in the decision.