OPINION
{¶ 1} Plaintiffs-appellants, Stephen J. Schaller, Robert M. Grieser, and Bridgette C. Roman ("appellants"), appeal the judgment of the Franklin County Court of Common Pleas, which denied appellants' request for a temporary restraining order and *Page 2 
preliminary injunction prohibiting defendants-appellees, Nancy H. Rogers, Attorney General of Ohio ("Attorney General"), and Jennifer Brunner, Secretary of State of Ohio ("Secretary") (collectively, "appellees"), from enforcing R.C. 3519.01(B) and 3519.05.
 {¶ 2} The facts of this case are not in dispute. On May 20, 2008, the Ohio General Assembly passed Sub. H.B. No. 545 ("H.B. 545"), which would make changes to Ohio law concerning short-term loans. Governor Strickland signed H.B. 545 on June 2, 2008.
 {¶ 3} On June 9, 2008, pursuant to R.C. 3519.01(B)(1), appellants submitted to both the Secretary and the Attorney General a petition ("Petition 1") proposing to repeal H.B. 545. On June 19, 2008, pursuant to R.C. 3519.01(B)(2)(a), the Secretary certified that at least 1,000 of the signatures on Petition 1 were valid and that the text of H.B. 545 contained in Petition 1 was correct. Also on June 19, 2008, pursuant to R.C. 3519.01(B)(3), the Attorney General notified appellants that she was unable to certify the summary contained in Petition 1 as a fair and truthful statement of H.B. 545.
 {¶ 4} On June 25, 2008, appellants submitted a second petition ("Petition 2") to both the Secretary and the Attorney General. Appellees took no action on Petition 2 before appellants submitted to both the Secretary and the Attorney General a third petition ("Petition 3"), which proposed to repeal only Section 3 of H.B. 545.
 {¶ 5} On July 7, 2008, appellants filed a complaint in the trial court for declaratory and injunctive relief. In their first and second claims for relief, appellants alleged that R.C. 3519.01(B) and 3519.05 are invalid and unenforceable because they "limit and restrict both the reserved power of referendum and the Ohio Constitution's provisions providing for the exercise of such reserved power." In their third and fourth *Page 3 
claims for relief, appellants alleged that R.C. 3519.01(B) and 3519.05
violate their rights to "assemble together and consult for their common good, and to petition the general assembly for redress of their grievances in violation of Article I, § 3 of the Ohio Constitution, and the freedom of speech in violation of Article I, § 11 of the Ohio Constitution." On all these grounds, appellants sought a declaration that R.C. 3519.01(B) and 3519.05 are unconstitutional and invalid, a temporary restraining order, preliminary injunction, and permanent injunction prohibiting appellees from enforcing the provisions, and an order that the 90-day "period for filing of a referendum petition on HB 545 shall begin the day immediately following the Court's decision in this case."
 {¶ 6} On July 10, 2008, the Attorney General advised appellants that she was unable to certify the summary contained in Petition 2. In her view, the 17-page summary was too long to be considered a short and concise summary of the 21-page bill. Nevertheless, that same day, the Secretary certified that at least 1,000 of the signatures on Petition 2 were valid and that the text of H.B. 545 contained in Petition 2 was correct.
 {¶ 7} Also on July 10, 2008, the Attorney General certified the summary of Section 3 of H.B. 545 contained within Petition 3 as a fair and truthful summary of that section. On July 11, 2008, the Secretary certified that at least 1,000 of the signatures on Petition 3 were valid and that the text of Section 3 of H.B. 545 contained in Petition 3 was correct.
 {¶ 8} On July 8, 2008, following a hearing, the trial court orally denied appellants' request for temporary relief. On July 14, 2008, the trial court issued an order denying appellants' request for temporary relief and for preliminary injunction because *Page 4 
appellants had failed to show a substantial likelihood of success on the merits. The court certified the order as final and appealable pursuant to Civ. R. 54(B), and appellants filed their notice of appeal on July 15, 2008.
 {¶ 9} On July 16, 2008, appellants filed an amended complaint. As amended, the complaint included factual allegations concerning actions of the Secretary and the Attorney General since their July 7 filing. While acknowledging that the Attorney General had certified the summary contained within Petition 3, appellants stated that their "strong preference is to submit the entirety of HB 545 to the electors of Ohio for their approval or rejection." For relief, appellants sought a declaration that R.C. 3519.01(B) and 3519.05 are "unconstitutional and invalid, both on their face and as applied" to appellants.
 {¶ 10} Appellants raise the following assignment of error:
 The trial court erred by denying [appellants'] motion for a preliminary injunction.
 {¶ 11} With some exceptions not relevant here, the Ohio Constitution reserves for the people of the state of Ohio the power to adopt or reject, by vote at a general election, any law or section of law proposed by the General Assembly. Sections 1, 1c, Article II, Ohio Constitution. The Constitution sets out specific requirements for approving or rejecting a law by referendum. These requirements, the Constitution provides, "shall be self-executing, except as herein otherwise provided. Laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions [that is, provisions for initiative and referendum] or the powers herein reserved." Section 1g, Article II, Ohio Constitution. *Page 5 
 {¶ 12} These initiative and referendum clauses were inserted into the Ohio Constitution in 1912. As appellants point out, the Constitution contains no requirements for submission of a preliminary petition to the secretary of state or the attorney general.
 {¶ 13} In 1929, however, the General Assembly passed G.C. 4785-175, which it titled "NOTICE OF INTENTION TO CIRCULATE PETITIONS." Am. Sub. S.B. No. 2, 113 Ohio Laws 307, 391. The section required anyone proposing a law or constitutional amendment by initiative petition or filing a referendum petition to repeal a law, to file a copy of the relevant law or amendment, "together with a synopsis of the same," with the secretary of state before circulating a petition. Id. The General Assembly also passed G.C. 4785-176, which provided that 100 or more electors "may, by a written petition signed by them, submit any proposed law or constitutional amendment to the attorney general for examination." Id. If the attorney general found the law or amendment "correct as to form," he was to so certify. Id. The 100 or more electors "may also submit to the attorney general a fair and impartial synopsis" of the proposed law or amendment. Id. If the attorney general found the summary to be "fair and truthful," he was to so certify. Id. The provisions relating to submissions to the attorney general did not refer to the inclusion of any summary for purposes of a referendum petition.
 {¶ 14} In 1931, the General Assembly made additional changes to G.C. 4785-175. These changes added a requirement that the 100 or more electors submit a proposed law or amendment "or measure to be referred, and a summary of same to the attorney general for examination. If in the opinion of the attorney general the summary is a fair and truthful statement of the proposed law, constitutional amendment or measure to be referred, he shall so certify." Am. S.B. No. 320, 114 Ohio Laws 679, 708. *Page 6 
In Section 4785-176, the General Assembly added more specific requirements for the form of a petition. See id. at 708-709.
 {¶ 15} In 1989, the General Assembly again changed these sections, which had by then become R.C. 3519.01 and 3519.05, respectively. See Am. H.B. No. 7, 1989 Session Laws 5-65 et seq. (Baldwin's 1989). In R.C. 3519.01, the General Assembly added a requirement that the attorney general and secretary shall act on a submitted referendum petition within ten business days. The General Assembly did not add a similar time requirement for initiative petitions.
 {¶ 16} Finally, in 2006, the General Assembly added to R.C. 3519.01(A) a requirement that an initiative petition could contain only one proposed law or amendment. See Am. Sub. H.B. No. 3, 2006 Session Laws L-165 et seq. (Baldwin's 2006). It changed the 100-elector requirement to a 1,000-elector requirement for both initiative and referendum petitions and added a requirement in Subsection (A) that the attorney general shall examine a submitted initiative petition within ten days, not within ten business days, as Subsection (B) requires for referendum petitions. Id. And the General Assembly added R.C. 3519.01(C), which states:
 Any person who is aggrieved by a certification decision under division (A) or (B) of this section may challenge the certification or failure to certify of the attorney general in the supreme court, which shall have exclusive, original jurisdiction in all challenges of those certification decisions.
Id. at L-166.
 {¶ 17} As an initial matter, appellees assert that R.C. 3519.01(C) deprived the trial court of jurisdiction over this action. To interpret this jurisdictional provision, we begin with the principle that, "[w]here the language of a statute is plain and *Page 7 
unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." Sears v.Weimer (1944), 143 Ohio St. 312, paragraph five of the syllabus. Thus, "[i]t is only where the words of a statute are ambiguous, are based upon an uncertain meaning, or, if there is an apparent conflict of some provisions, that a court has the right to interpret a statute."Drake-Lassie v. State Farm Ins. Cos. (1998), 129 Ohio App.3d 781, 788, citing Kroff v. Amrhein (1916), 94 Ohio St. 282. And, "[u]nless words are otherwise defined or a contrary intent is clearly expressed," we must give words contained in a statute "their plain and ordinary meaning." Cincinnati Metro. Hous. Auth. v. Morgan, 104 Ohio St.3d 445,2004-Ohio-6554, ¶ 6, citing Coventry Towers, Inc. v. Strongsville
(1985), 18 Ohio St.3d 120, 122, and Youngstown Club v. Porterfield
(1970), 21 Ohio St.2d 83, 86.
 {¶ 18} We conclude that R.C. 3519.01(C) is neither uncertain nor ambiguous. The subsection allows a person "aggrieved by a certification decision" relating to either an initiative or referendum petition to "challenge the certification or failure to certify" in the Supreme Court of Ohio and provides that the Supreme Court shall have exclusive jurisdiction "in all challenges of those certification decisions." Id. This language obviously applies to challenges of specific certification decisions.
 {¶ 19} We may also conclude, however, that an action that does not challenge a certification or a failure to certify falls outside Subsection (C). To the extent statutory interpretation is necessary, "[t]he paramount consideration in construing statutes is legislative intent." State ex rel. Sinay v. Sodders, 80 Ohio St.3d 224, 227,1997-Ohio-344. Here, we discern no intent to foreclose the general jurisdiction of the common *Page 8 
pleas court or its powers of declaratory judgment under R.C. 2721. The intent of R.C. 3519.01(C), it appears, is to provide for immediate and timely review of certification issues in order to resolve them quickly.
 {¶ 20} Here, appellants' complaint sought only broad declaratory and injunctive relief related to the statutory process for exercising the power of referendum. The complaint, which appellants filed before the Attorney General took action on Petitions 2 or 3, did not challenge the Attorney General's failure to certify their summary. Instead, the complaint challenged the powers granted to the Secretary of State and the Attorney General under R.C. 3519.01(B) and 3519.05, the requirements placed upon petitioners seeking a referendum, and the applicable time frames. Because appellants challenged the constitutionality of the statutory process itself, and not a certification decision, R.C. 3519.01(C) is inapplicable, and exclusive jurisdiction does not rest with the Supreme Court.
 {¶ 21} Nevertheless, appellees assert that we should characterize this litigation as a challenge to the Attorney General's failure to certify. To be sure, appellants' amended complaint and the manner in which they have pursued their claims, both in the trial court and on appeal, suggest that they seek approval of their petitions. While we discern no such claim from the original complaint — the only complaint before the trial court on preliminary injunction — we state expressly that R.C. 3519.01(C) is the exclusive means by which appellants may challenge the Attorney General's decisions not to certify Petitions 1 and 2, and the trial court has no jurisdiction to review those decisions. *Page 9 
 {¶ 22} In support of their contrary reading of R.C. 3519.01(C), appellees offer this court's opinion in State ex rel. Rankin v.Petro, 161 Ohio App.3d 521, 2005-Ohio-2717. In Rankin, this court reviewed a trial court decision that found unconstitutional the attorney general's certification of a summary as being a fair and truthful statement of the proposed constitutional amendment. The plaintiffs filed a complaint in the common pleas court against the attorney general and the individuals who filed the petition. The plaintiffs sought a writ of mandamus ordering the attorney general to withdraw his certification, a declaration that the summary was not a fair and truthful statement, a declaration that the certification was invalid because it did not comply with R.C. 109.06, a declaration that the description of the proposed amendment was incomplete and misleading, and a temporary restraining order prohibiting the petitioners from circulating further petitions. Important for our purposes here, the trial court found that the attorney general had improperly certified the summary because it was not a fair and truthful statement of the proposed amendment.
 {¶ 23} On appeal, this court reversed, finding that the trial court lacked jurisdiction over the challenge. Reviewing Supreme Court precedent, this court concluded that R.C. 3519.01 "vests the authority to determine whether a submitted summary constitutes a fair and truthful statement of a proposed matter solely in the Attorney General." Id. at ¶ 31. Because the attorney general had already determined that the summary was fair and truthful, the trial court had no jurisdiction to determine whether certification was proper.
 {¶ 24} This court then went on to describe the two additional assignments of error raised by appellants, including whether the summary was fair and truthful and *Page 10 
whether the trial court erred in determining "that the statutory requirement of a summary is unconstitutional as it relates to the proposed amendment at issue." Id. at ¶ 34. This court stated: "Both arguments assume jurisdiction in the common pleas court. We have already concluded that the common pleas court was without jurisdiction to consider the propriety of the Attorney General's actions under R.C. 3519.01. Having so found, the court was also without jurisdiction to consider the constitutionality of the statute." Id.
 {¶ 25} Here, appellees assert that our statements in Rankin concerning the trial court's lack of jurisdiction to consider the constitutional arguments at issue in that case constitute this court's rejection of appellants' argument that R.C. 3519.01(C) does not preclude trial court review of appellants' constitutional arguments in this case. But this court decided Rankin in June 2005, a year before R.C. 3519.01(C) became effective. Because the provision for exclusive Supreme Court jurisdiction did not yet exist, we cannot construe any statement concerning jurisdiction in Rankin as interpreting jurisdiction under R.C. 3519.01(C).
 {¶ 26} We similarly reject appellees' reliance upon State ex rel.Tulley v. Brown (1972), 29 Ohio St.2d 235, which appellees offer for the proposition that "[t]he only method to challenge the factual basis of [the Attorney General's] certification decision is a mandamus action before the Supreme Court." (Appellees' brief at 3.) In Tulley, the Supreme Court granted a writ of mandamus ordering the attorney general to proceed with certification of an initiative petition. Before the attorney general had certified the petition, challengers filed an action in common pleas court to preclude the attorney general from proceeding with the certification. The common pleas court ordered the *Page 11 
attorney general to retain the petition pending further order of the court, and the proponents of the certification sought immediate relief in the Supreme Court.
 {¶ 27} While two members of the Tulley court issued separate dissenting opinions addressing the constitutionality of the certification process itself, the per curiam opinion noted that the parties had not raised or argued any constitutional objections to that process, and the court had reached no conclusion on the constitutional question. As for the merits, the court granted a writ of mandamus, holding that, because the attorney general had already found the summary to be a fair and truthful statement, the petitioners were entitled to a writ ordering the attorney general to proceed with the certification.
 {¶ 28} Again, we conclude that, because Tulley predates the enactment of R.C. 3519.01(C), it holds no precedential value for our interpretation of that section. In addition, we conclude that the issue before the court in Tulley was a challenge to a specific certification decision, not the constitutional challenge to the process we have before us in this case. As such, Tulley does not dissuade us from our conclusion that R.C. 3519.01(C) does not preclude appellants' action for declaratory and injunctive relief.
 {¶ 29} For these reasons, we conclude that appellants' constitutional challenge to R.C. 3519.01(B) and 3519.05 does not fall within the confines of the exclusive jurisdiction granted to the Supreme Court of Ohio under R.C. 3519.01(C) and was properly before the trial court. We turn, then, to the trial court's determination that appellants are not likely to succeed on the merits of their claims and its denial of a preliminary injunction. *Page 12 
 {¶ 30} The standards by which a trial court must judge a motion for preliminary injunction are well-established. A moving party is entitled to injunctive relief if that party establishes the following: (1) a substantial likelihood of prevailing on the merits; (2) irreparable injury in the absence of injunctive relief; (3) no unjustifiable harm to third parties; and (4) that the injunction would serve the public interest. Vanguard Transp. Sys., Inc. v. Edwards Transfer Storage Co.,Gen. Commodities Div. (1996), 109 Ohio App.3d 786, 790, citing ValcoCincinnati, Inc. v. N D Machining Serv., Inc. (1986),24 Ohio St.3d 41.
 {¶ 31} The standard of review on appeal from the granting of injunctive relief is whether the trial court abused its discretion.Prairie Twp. Bd. of Trustees v. Ross, Franklin App. No. 03AP-509,2004-Ohio-838, ¶ 11, citing Perkins v. Village of Quaker City (1956),165 Ohio St. 120, 125. "Injunction is an extraordinary remedy equitable in nature, and its issuance may not be demanded as a matter of strict right; the allowance of an injunction rests in the sound discretion of the court and depends on the facts and circumstances surrounding the particular case." Perkins, at syllabus. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. "Absent such a showing, this court cannot reverse." Prairie Twp. at ¶ 11.
 {¶ 32} As the Supreme Court of Ohio explained in Arbino v. Johnson Johnson, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 25, "[i]t is difficult to prove that a statute is unconstitutional. All statutes have a strong presumption of constitutionality." Before a court may declare a statute unconstitutional, "it must appear beyond a reasonable doubt *Page 13 
that the legislation and constitutional provisions are clearly incompatible." State ex rel. Dickman v. Defenbacher (1955),164 Ohio St. 142, paragraph one of the syllabus.
 {¶ 33} Proving that a statute is unconstitutional on its face, as appellants alleged in their original complaint, is especially difficult. A party raising a facial challenge must demonstrate that there is no set of circumstances in which the statute would be valid. Arbino at ¶ 26, citing Harrold v. Collier, 107 Ohio St.3d 44, 2005-Ohio-5334, andUnited States v. Salerno (1987), 481 U.S. 739, 745. "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid."Harrold at ¶ 37.
 {¶ 34} As we indicated at the outset, the General Assembly has, over many years, changed and developed the process petitioners face when seeking to repeal a state law by referendum. In its current form, R.C. 3519.01(B) states:
 (1) Whoever seeks to file a referendum petition against any law, section, or item in any law shall, by a written petition signed by one thousand qualified electors, submit the measure to be referred and a summary of it to the secretary of state and, on the same day or within one business day before or after that day, submit a copy of the petition, measure, and summary to the attorney general.
 (2) Not later than ten business days after receiving the petition, measure, and summary, the secretary of state shall do both of the following:
 (a) Have the validity of the signatures on the petition verified;
 (b) After comparing the text of the measure to be referred with the copy of the enrolled act on file in the secretary of state's office, containing the law, section, or item of law, determine whether the text is correct and, if it is, so certify.
 (3) Not later than ten business days after receiving a copy of the petition, measure, and summary, the attorney general shall examine the summary and, if in the attorney general's *Page 14 
opinion, the summary is a fair and truthful statement of the measure to be referred, so certify.
 {¶ 35} Although appellants' arguments focus on R.C. 3519.01(B), they also challenge R.C. 3519.05, which prescribes detailed rules for the form of initiative and referendum petitions. As for referendum petitions, R.C. 3519.05 states:
 The general provisions set forth in this section relative to the form and order of an initiative petition shall be, so far as practical, applicable to a referendum petition, the heading of which shall be as follows:
 "REFERENDUM PETITION To be submitted to the electors for their approval or rejection"
 The title, which follows the heading, shall contain a brief legislative history of the law, section, or item of law to be referred. The text of the law so referred shall be followed by the certification of the secretary of state, in accordance with division (B)(2)(b) of section 3519.01 of the Revised Code, that it has been compared with the copy of the enrolled act, on file in the secretary of state's office, containing such law, section, or item of law, and found to be correct.
 {¶ 36} In support of their assignment of error, appellants argue, first, that the Constitution does not include requirements for submissions to the attorney general and secretary of state. Section 1g, Article II, of the Ohio Constitution, appellants point out, states that the provisions for initiative and referendum petitions "shall be self-executing, except as herein otherwise provided. Laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions or the powers herein reserved." As the Supreme Court stated in State ex rel. Hodges v. Taft (1992), 64 Ohio St.3d 1, 5: "The powers of initiative and referendum should be liberally construed to effectuate the rights reserved. `* * * The general assembly cannot enlarge the power of the people nor can it diminish it.'" (Citation omitted.) By adding requirements to the *Page 15 
referendum process, appellants argue, R.C. 3519.01(B) and 3519.05
violate the Constitution's prohibition against "limiting or restricting" the power of referendum.
 {¶ 37} We conclude, however, that nothing in Section 1g precludes additional requirements, so long as they facilitate, and do not limit or restrict, the reserved powers of referendum or initiative. The question is not whether there could be additional requirements, but whether the statutory requirements at issue here facilitate the reserved powers without limiting or restricting them.
 {¶ 38} In In re Protest Filed with the Franklin Cty. Bd. of Electionsby Citizens for the Merit Selection of Judges, Inc. (1990),49 Ohio St.3d 102, the Supreme Court considered whether R.C. 3519.10, which required that each signer of any initiative petition had to include his or her voting residence, conflicted with Section 1g. In determining that no conflict existed, the court stated that it did "not view this requirement as restricting or limiting the power to sign initiative petitions conferred by Section 1g, Article II, but as a fully contemplated and consistent requirement of the voting franchise provisions." Id. at 106. The purpose of the requirement, the court concluded, "is not to restrict the power of the people to vote or to sign petitions, but to ensure the integrity of and confidence in the process." Id.
 {¶ 39} In In re Protest of Brooks, 155 Ohio App.3d 370,2003-Ohio-6348, the Third District Court of Appeals considered whether the circulator compensation statement requirement contained within R.C. 3519.05 violated Section 1g on the grounds that it restricts the exercise of the right of referendum. Relying on Buckley v. Am.Constitutional Law Found., Inc. (1999), 525 U.S. 182, the court concluded that the requirement did "not, in any meaningful manner or degree, restrict or limit the ability of *Page 16 
people to sign initiative petitions." Brooks at ¶ 14. Instead, the court concluded, "it provides potential signers with important information regarding the initiative so that when they are asked by a circulator to sign a petition, they may make a more informed decision whether or not to do so. The disclosure requirement serves to help deter circulation fraud and abuse by encouraging petition circulators to be truthful and self-disciplined." Id. Recognizing that states have "`considerable leeway to protect the integrity and reliability of the initiative process,'" the court stated that "a reasonable reading of R.C. 3519.05
reveals that neither the purpose nor effect of the circulator's compensation statement is to restrict the rights of the people with regard to the initiative process. Rather, the effect is to help ensure the integrity and reliability of the process through public disclosures." Id. at ¶ 15, quoting Buckley at 192. And, "[b]y ensuring integrity and reliability in the initiative petition process, the law facilitates the exercise of the initiative power by the people." Id. at ¶ 15.
 {¶ 40} In this case, appellants argue that R.C. 3519.01(B) and 3519.05
violate the right of referendum in the following ways: (1) by, pursuant to R.C. 3519.01(B)(1), requiring the submission of a petition signed by 1,000 electors and containing a summary of the law sought to be repealed; (2) by, pursuant to R.C. 3519.01(B)(2), allowing the secretary of state ten business days to verify the signatures and certify that the proposed text of the law to be repealed is correct and by, pursuant to R.C. 3519.05, requiring the secretary's certification before petitions may be circulated; and (3) by, pursuant to R.C. 3519.01(B)(3), allowing the attorney general ten business days to review and certify the summary as fair and truthful. In response, appellees do not present arguments in favor of constitutionality. Instead, appellees argue that this court's *Page 17 
decision in State ex rel. Durell v. Celebrezze (1979),63 Ohio App.2d 125, controls. We disagree.
 {¶ 41} In Durell, this court refused to enjoin the secretary of state from transmitting initiative part-petitions to the General Assembly, even though the court concluded that the attorney general should not have certified the proposed summary because the petition on which the summary appeared did not contain the signatures of 1,000 electors, as required in R.C. 3519.01. In reaching this conclusion, this court stated: "Strictly speaking, the statutory procedure under R.C. 3519.01
is not part of the initiative process but is a statutory requirement prior to commencement of the initiative process under the Constitution." Id. at 130. The statutory process, the court found, "is complete upon the certification by the Attorney General that the summary is accurate. It is at this point that the constitutional initiative process commences." Id.
 {¶ 42} We conclude, however, that Durell has no impact on the matter before us. The Durell court stated expressly that it was "unnecessary to resolve the issue as to whether or not the requirements of R.C. 3519.01, including those requiring that a written petition be filed with the Attorney General, are constitutional." Id. at 129. And, while the court expressed its opinion that the statutory initiative process was separate from the constitutional initiative process, it expressed no opinion about when the constitutional referendum process, which has a 90-day time frame that includes the time for certifications under R.C. 3519.01(B), begins.
 {¶ 43} As to the merits of appellants' arguments, we note, again, the posture of this matter on appeal. The trial court had before it only the original complaint, which raised only facial constitutional challenges to the statutes at issue. The court denied *Page 18 
only preliminary relief and with limited analysis. On remand, the trial court will grant or deny permanent relief on the merits. And we have before us only limited briefing on the constitutional questions. Within these limitations we consider whether the trial court abused its discretion.
 {¶ 44} With respect to R.C. 3519.01(B)(1), appellants argue that requiring that 1,000 electors sign the summary petition before it may be submitted to the attorney general and secretary of state restricts their ability to exercise their right of referendum. In reality, appellants argue, petitioners must gather at least 2,000 signatures, "causing a delay of several days and added expense." (Appellants brief at 8, fn. 4.)
 {¶ 45} In various contexts, the United States Supreme Court has recognized a state's interest in imposing a minimum signature requirement as a means of ensuring a show of support before a candidate or political party may have access to the ballot, "lest it become unmanageable." New York State Bd. of Elections v. Torres (2008), ___ U.S. ___, 128 S.Ct. 791, 798 (upholding requirement for 500 signatures collected within 37-day period on party delegate petition), citingJenness v. Fortson (1971), 403 U.S. 431, 442 (stating: "There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot — the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election"). At the very least, it is arguable that the 1,000-signature requirement similarly may ensure that a proposed petition has at least some support before the more formal petition process begins. *Page 19 
 {¶ 46} We also consider whether the summary requirement contained within R.C. 3519.01(B)(1) facilitates the process. Requiring a summary of the law sought to be repealed arguably helps potential signers understand the content of the law more efficiently than if they had to rely solely on a review of the entire law, especially where the law sought to be repealed is lengthy, complicated or difficult to navigate. To be sure, Section 1g gives potential signers the right to rely upon the actual text of the law, as Justice Brown observed in hisTulley dissent, but R.C. 3519.01(B)(1) and 3519.05 protect that right by not only requiring the petition to include a summary, but also requiring it to include the full text of the law.
 {¶ 47} Requiring a summary on the petition may also help deter circulation fraud and abuse by deterring circulators from misrepresenting the contents or impact of the law sought to be repealed. While the full text of the law is available to potential signers, the summary is an accessible check against misrepresentations and misstatements, especially where it is not practical for a signer to review the entire law.
 {¶ 48} The heart of appellants' arguments is their objection to the requirement, contained within R.C. 3519.01(B)(3), that the summary must be submitted to the attorney general for review. If the requirement of a summary facilitates the referendum petition process, however, the requirement of attorney general review and certification of that summary arguably would also facilitate the process. A summary is valuable to a potential signer only if it is fair and truthful, just as a summary deters circulation fraud and abuse only if it is fair and truthful. While there may be any number of ways to ensure the integrity of the summary itself, requiring review by the attorney general, the top law officer for the state, may be a reasonable method for doing so. *Page 20 
 {¶ 49} Appellants' primary concern, however, is time. Pursuant to Section 1c, Article II, of the Ohio Constitution, with some limited exceptions, no law passed by the General Assembly may go into effect until 90 days after the governor files the law with the secretary of state. Section 1c then provides that a petition, signed by 6 percent of the electors of the state, may be filed with the secretary of state within that 90 days in order to submit the law to the electors for their approval or rejection at the next regular or general election.
 {¶ 50} Here, appellants argue that granting the attorney general ten business days in which to certify or fail to certify a summary deprives them of valuable time within their limited, 90-day time frame. Those ten business days, they argue, can actually encompass up to 16 calendar days when the ten-business-day window includes two weekends and a legal holiday.
 {¶ 51} We note, first, that R.C. 3519.01(B) ensures that the attorney general cannot block a petition effort altogether. In his dissenting opinion in Tulley, Justice Schneider concluded that the R.C. 3519.01
process, including the provisions for "a summary and its approval by the Attorney General, without any time limitations placed thereon," impeded the right of initiative. (Emphasis added.) Tulley at 239 (Schneider, J., dissenting). After Tulley, however, the General Assembly added the ten-business-day limitation. Therefore, under current law, the attorney general's ability to impede the process is limited.
 {¶ 52} Nevertheless, we acknowledge the daunting task facing potential petitioners. While the population of Ohio grows, so grows the number of signatures required to meet the 6 percent constitutional requirement. Appellants have argued that *Page 21 
the ten-business-day review could cripple a petitioner's efforts at gathering the necessary signatures to meet the 90-day deadline. Arguably, however, the ten-business-day provision would not always cripple such efforts. The fact that the ten-business-day provision might work to restrict, rather than facilitate, the referendum process under some plausible set of circumstances is insufficient to render the trial court's denial of relief an abuse of discretion.
 {¶ 53} For all these reasons, we conclude that the trial court did not abuse its discretion in determining that appellants are unlikely to succeed on the merits of their constitutional claim. Accordingly, we overrule appellants' assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas. We remand this matter for further proceedings consistent with this opinion and the law.
Judgment affirmed.
KLATT, J., concurs.
BRYANT, J., dissents.