**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dudley v. Yost*, Slip Opinion No. 2024-Ohio-5166.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5166

THE STATE EX REL. DUDLEY ET AL. *v.* YOST, ATTY. GEN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dudley v. Yost*, Slip Opinion No. 2024-Ohio-5166.]**

*Mandamus—Elections—Writ sought to direct attorney general to certify summary of proposed constitutional amendment—Limited writ granted ordering attorney general to examine summary of relators' proposed amendment under R.C. 3519.01(A).*

(No. 2024-0161—Submitted September 17, 2024—Decided October 30, 2024.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ.

**Per Curiam.**

{¶ 1} Relators, William Dudley, Terence Brennan, Michael Harrison, Pamela Simmons, and Deidra Reese, seek to place before Ohio voters a proposed constitutional amendment they have titled, "Ohio Voters Bill of Rights." As required by R.C. 3519.01(A), relators submitted the text and a summary of their proposed amendment to respondent, Ohio Attorney General Dave Yost, to obtain his certification that their summary "is a fair and truthful statement" of their proposed amendment, *id.* The attorney general did not certify relators' summary, because he determined that the title "Ohio Voters Bill of Rights" is not a fair and truthful statement of the proposed amendment.

{¶ 2} Relators seek a writ of mandamus directing the attorney general to certify their summary, contending that the attorney general is not authorized to review the *title* of a proposed constitutional amendment because the title is not part of the "summary." We agree with relators that the attorney general's duty under R.C. 3519.01(A) extends to the summary but not to the title. But we grant only a limited writ of mandamus ordering the attorney general to examine the summary of relators' proposed amendment, determine whether the summary is a fair and truthful statement of the proposed amendment, and, if so, certify and forward relators' petition to the Ohio Ballot Board.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Proposing a Constitutional Amendment by Initiative Petition

{¶ 3} Article II, Section 1a of the Ohio Constitution reserves to the people the right to amend the Constitution by initiative petition. Under R.C. 3519.01(A), proponents of a constitutional amendment must submit a preliminary initiative petition and summary thereof to the attorney general. The statute does not require the proposed amendment to have a "title" when submitted to the attorney general. *See id.*

**{¶ 4}** The petition must contain the signatures of at least 1,000 qualified electors of the State. *Id.* Within ten days after receipt of the petition and summary, "the attorney general shall conduct an examination of the summary." *Id.* If the attorney general determines that the summary is "a fair and truthful statement" of the proposed amendment, the attorney general "shall so certify" and then forward the petition to the Ohio Ballot Board for its approval. *Id.* If the ballot board determines that the petition contains only one proposed amendment, it must certify its approval to the attorney general, who will in turn file with the secretary of state a verified copy of the proposed amendment, along with the summary and the attorney general's certification. *Id.*; R.C. 3505.062(A). At that point, the petition's circulators "may begin . . . to gather the necessary signatures to qualify for the ballot." *State ex rel. Ohioans for Secure & Fair Elections v. LaRose*, 2020-Ohio-1459, ¶ 3; *see also id.* at ¶ 2-3 (summarizing the statutory process for a constitutional amendment proposed by initiative petition).

**B. Relators' Proposed Amendment**

**{¶ 5}** On December 19, 2023, relators filed with the attorney general a petition containing a proposed constitutional amendment titled "Secure and Fair Elections," along with a summary and the full text of the proposed amendment. The title is not part of the full text of the proposed amendment. The petition included the signatures of more than 2,000 Ohio electors. Relators' proposed amendment would amend Article V, Sections 1, 2, and 6 of the Ohio Constitution and address topics including voter qualifications, voting as a fundamental right, voter registration and identification, access to absentee ballots, the procedures for conducting elections, the power of this court to require the General Assembly to make adequate appropriations to effectuate the provisions of the amendment, and the remedies available for individuals seeking to enforce the rights set forth in the amendment.

**{¶ 6}** On December 28, the attorney general responded to relators' petition in a letter to their counsel, stating that he was "unable to certify the summary as a fair and truthful representation of the proposed amendment." The attorney general "identified omissions and misstatements that, as a whole, would mislead a potential signer as to the scope and effect of the proposed amendment." The letter identified four specific flaws in relators' summary. One was that "the title 'Secure and Fair Elections' does not fairly or truthfully summarize or describe the actual content of the proposed amendment." Instead, the proposed amendment was, according to the attorney general, "a compilation of specific election regulations."

**{¶ 7}** Relators contend that they resolved all issues raised in the attorney general's December 28 letter. They resubmitted their petition on January 16, 2024, along with the text of the proposed constitutional amendment, a summary, and part-petitions containing the signatures of more than 2,000 qualified electors. Relators also changed the title of the proposed amendment on their petition to "Ohio Voters Bill of Rights." In a letter submitted with their petition, relators' counsel noted that although they had adopted a new title for the proposed amendment, they disputed the attorney general's authority to review the title.

**{¶ 8}** The attorney general responded to the revised petition and summary on January 25. He again rejected relators' submission, stating that "[t]he title 'Ohio Voters Bill of Rights' does not fairly or accurately summarize or describe the actual content of the proposed amendment." Though acknowledging that the attorney general's office "has not always rigorously evaluated" a petition's title in the past, the attorney general stated that this court's recent decision in *State ex rel. Hildreth v. LaRose*, 2023-Ohio-3667, had confirmed that the title of a ballot initiative is material to voters.[1] The attorney general also acknowledged that the office had

---

1. In *Hildreth*, we granted a writ of mandamus ordering a board of elections and the secretary of state to sustain a protest to an initiative petition and remove the initiative from the ballot because

previously certified petitions with "Bill of Rights" in the proposed amendments' titles—specifically, the "Nursing Facility Patients' Bill of Rights" in 2021 and "The Ohio Voters Bill of Rights" in 2014. But, the attorney general stated, the past practice as to those proposed amendments was not dispositive of the question whether relators' petition title "fairly or accurately summarize[d] or describe[d] the actual content of the proposed amendment," because the attorney general's office in those previous instances "did not undertake to determine whether the title itself [was] a 'fair and truthful statement' " under R.C. 3519.01(A). The attorney general added that "in our time of heightened polarization and partisanship, whether the title of a proposed amendment fairly or truthfully summarizes the proposal takes on even greater importance to voters asked to sign a petition."

{¶ 9} The attorney general then explained his reasons for concluding that the title "Ohio Voters Bill of Rights" was not a fair or truthful description of the proposed constitutional amendment. The attorney general identified two problems with the title. First, he opined that the title does not "fairly or truthfully summarize or describe the actual content of the proposed amendment, which confers discretion on government officials." The attorney general maintained that purely discretionary acts do not create any "legitimate claim of entitlement" that could be characterized as establishing a "right." And he found that even though the proposed amendment did contain some provisions that "define[d]" rights for Ohio voters, it also "contain[ed] provisions that [could not] properly be described as creating a right for Ohio voters at all" because the implementation of those provisions was subject to the discretion of local election authorities. "Any single such example"

_____

the title of the proposed ordinance on the petitions circulated for signature was different from the title appearing on the signed petition filed with the city auditor and presented to the board of elections for placement on the ballot. 2023-Ohio-3667, at ¶ 1, 4, 16-20, 23. The statute at issue in *Hildreth* required the petition to have a title. *Id.* at ¶ 15, citing R.C. 731.31.

of a provision that failed to create an enforceable right, the attorney general asserted, rendered the title misleading.

{¶ 10} Second, the attorney general opined that a "bill of rights" is ordinarily understood to be "an articulation of specific, discrete rights that may be enforced by individuals against the government." In contrast, the attorney general explained, the proposed amendment "focuses in detail on the processes the State uses to carry out its elections," such as the appropriation of funds and voter registration—matters that do not fit the ordinary definition of a "bill of rights."

{¶ 11} Other than the title, the attorney general did not identify any part of the summary that was defective. "[W]ithout reaching the balance of the summary," the attorney general stated that **"[t]he highly misleading and misrepresentative title of this amendment is sufficient *on its own* to reject this petition."** (Boldface and italics in original.)

{¶ 12} Relators commenced this original action in mandamus on February 1, 2024, invoking this court's jurisdiction under R.C. 3519.01(C).[2] They contend that R.C. 3519.01(A) does not authorize the attorney general to review the title of a proposed constitutional amendment. Relators ask this court to issue a writ of mandamus ordering the attorney general to certify their proposed amendment's summary and forward their petition to the Ohio Ballot Board. We denied the attorney general's motion to dismiss and granted an alternative writ, setting a schedule for the submission of evidence and briefs. 2024-Ohio-1922.

## II. ANALYSIS

{¶ 13} To be entitled to a writ of mandamus, relators must establish (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the attorney general to provide it, and (3) the lack of an adequate remedy in the ordinary

---

2. "Any person who is aggrieved by a certification decision under [R.C. 3519.01(A)] may challenge the certification or failure to certify of the attorney general in the supreme court, which shall have exclusive, original jurisdiction in all challenges of those certification decisions." R.C. 3519.01(C).

course of the law. *State ex. rel. Husted v. Brunner*, 2009-Ohio-4805, ¶ 11. In this case, relators lack an adequate remedy in the ordinary course of the law to challenge the attorney general's decision whether to certify their summary under R.C. 3519.01(A). *See State ex rel. Barren v. Brown*, 51 Ohio St.2d 169, 171 (1977) (determining that no adequate remedy in the ordinary course of the law was available to challenge the attorney general's refusal to certify under R.C. 3519.01). As to the first two elements, in extraordinary actions that challenge the decisions of the secretary of state, the ballot board, or county boards of elections, the applicable standard is whether they engaged in fraud, corruption, abuse of discretion or acted in clear disregard of applicable legal provisions. *Ohioans for Secure & Fair Elections*, 2020-Ohio-1459, at ¶ 14.

### A. Scope of Attorney General's Review of the Summary

{¶ 14} The outcome of this case turns on whether the attorney general has the statutory authority to review a title of a proposed constitutional amendment in the exercise of his duty under R.C. 3519.01(A). In deciding an issue of statutory interpretation, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus; *see also Olmsted Twp. v. Ritchie*, 2023-Ohio-2516, ¶ 10. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 2003-Ohio-1099, ¶ 12. The court may neither add words to nor delete words from the statutory language, *Columbia Gas Transm. Corp. v. Levin*, 2008-Ohio-511, ¶ 19, and must give effect to all parts of a statutory scheme, *see United Tel. Co. of Ohio v. Limbach*, 1994-Ohio-209, ¶ 11.

{¶ 15} The attorney general's authority under R.C. 3519.01(A) is limited to whether the summary of a proposed law or constitutional amendment is fair and truthful, and if it is, the attorney general must certify the summary and then forward

the petition to the Ohio Ballot Board. *Barren*, 51 Ohio St.2d at 170. The statute does not, however, define the term "summary." This court reads undefined terms as having their plain and ordinary meaning. *Vossman v. AirNet Sys., Inc.*, 2020-Ohio-872, ¶ 14.

{¶ 16} Relators argue that we "need look no further than the plain text of [R.C.] 3519.01" to conclude that the attorney general's authority to review the summary of a proposed constitutional amendment does not include authority to review the title.

{¶ 17} The attorney general relies on a plain-language reading of R.C. 3519.01 as well. He argues that his duty under R.C. 3519.01 to review the summary of a proposed constitutional amendment extends to "the entire summary, which includes the title." Accordingly, the attorney general is contending that "Ohio Voters Bill of Rights" is the title of the *summary* of relators' proposed amendment and is therefore within the scope of his statutorily required review.

*1. "Ohio Voters Bill of Rights" Is the Title of the Proposed Amendment*

{¶ 18} As an initial matter, we reject the attorney general's characterization of "Ohio Voters Bill of Rights" as the title of the *summary*, as opposed to the title, of the proposed constitutional amendment. The attorney general's framing of the issue is at odds with the format of the petition as well as the rationale he initially gave for rejecting it.

{¶ 19} As shown below, the January 16, 2024 petition submitted to the attorney general listed the title and summary as separate headings at the top of the first page:

**PETITION**

**To the Attorney General of Ohio**: Pursuant to Ohio Revised Code § 3519.01(A), the undersigned electors of the State of Ohio, numbering in excess of one thousand, hereby submit to you the full text of a proposed Amendment to the Ohio Constitution and a summary of the same.

TITLE

**Ohio Voters Bill of Rights**

SUMMARY

The proposed Amendment would amend Article V, Sections 1, 2, and 6 of the Ohio Constitution by adding new provisions and repealing some existing provisions.

Specifically, the Amendment would:

The text appearing underneath the heading "TITLE" is "Ohio Voters Bill of Rights." Underneath that is the heading "SUMMARY," which is followed by the summary's text. The most natural reading of the submission is that the title and the summary are separate things. That is, relators ascribed the title "Ohio Voters Bill of Rights" to the proposed constitutional amendment itself before then presenting the summary of it.

{¶ 20} Moreover, before this litigation commenced, the attorney general's rationale for rejecting relators' proposed summary reflected his understanding that he was evaluating "Ohio Voters Bill of Rights" as relators' title of the amendment itself. In his letter rejecting the petition at issue in this case, the attorney general stated that the "highly misleading and misrepresentative title *of this amendment*" was a sufficient reason for his decision. (Emphasis added.) Thus, the attorney general understood "Ohio Voters Bill of Rights" to be relators' title of the proposed amendment and not the title of the summary.

{¶ 21} In addition, in explaining his reasons for rejecting relators' summary because of its title, the attorney general acknowledged that in the past, the attorney general's office had "not always rigorously evaluated whether the title fairly or truthfully summarized a given proposed amendment." However, the attorney

general opined that the office's past practice of accepting titles similar to the one relators had proposed did not mean that he could not review the title "Ohio Voters Bill of Rights" in this case:

> Indeed, in our time of heightened polarization and partisanship, whether the title *of a proposed amendment* fairly or truthfully summarizes the proposal takes on even greater importance to voters asked to sign a petition. Thus, while examples of past practice from this Office may be relevant, *see, e.g.*, Nursing Facility Patients' Bill of Rights (2021); The Ohio Voters Bill of Rights (2014), they cannot be dispositive because they did not undertake to determine whether the title itself is a "fair and truthful statement."

(Emphasis added.) The attorney general went on to explain his reasons for concluding that "the title 'Ohio Voters Bill of Rights' does not fairly or truthfully summarize or describe *the actual content of the proposed amendment*." (Emphasis added.) Thus, it is evident from the attorney general's own statement rejecting the petition that he regarded "Ohio Voters Bill of Rights" as the title *of the amendment* and not the title of the summary.

{¶ 22} Accordingly, the outcome of this case turns on whether the attorney general's authority to examine the summary of a proposed constitutional amendment under R.C. 3519.01(A) extends to the amendment's title.

*2. Whether the Authority to Review the "Summary" Extends to the "Title"*

{¶ 23} As explained above, relators contend that R.C. 3519.01(A) grants to the attorney general the authority to examine only the "summary" of a proposed constitutional amendment, not the "title," while the attorney general argues that the plain meaning of the word "summary" includes a "title."

{¶ 24} The attorney general's argument relies on the premise that a title is part of the summary, but his argument overlooks that the use of different words signals a difference in meaning. *See Obetz v. McClain*, 2021-Ohio-1706, ¶ 21. Guided by that principle, we begin by considering the words' distinct definitions. The plain and ordinary meaning of "summary" is "a short restatement of the main points (as of an argument) for easier remembering, for better understanding, or for showing the relation of the points." *Webster's Third New International Dictionary* (2002). In other words, a "summary" is a condensed text that describes the contents of the whole of something larger.

{¶ 25} The definition of "title" is different from the definition of "summary." In the sense relevant here, "title" is defined as "a descriptive or general heading (as of a chapter in a book)" or "the heading which names an act or statute." *Webster's Third New International Dictionary* (2002).

{¶ 26} Based on these words' ordinary meanings, a "summary" and a "title" are different things that serve different purposes. A summary is an abbreviated description of a larger body of work: in the context of a proposed constitutional amendment, the summary provides a short statement of the proposed amendment's main points. In contrast, the title of a proposed amendment is simply the name ascribed to it. Indeed, in recognition of the differences between these two words, we have rejected challenges to a title on the basis that it lacks the detail of a summary. *See State ex rel. Citizens Not Politicians v. Ohio Ballot Bd.*, 2024-Ohio-4547, ¶ 81 (rejecting a challenge to a proposed constitutional amendment's ballot title on the basis that it ignored certain features of the amendment; adopting such an argument "would risk turning the ballot title into a ballot summary"); *State ex rel. Gil-Llamas v. Hardin*, 2021-Ohio-1508, ¶ 28 (rejecting an argument that the "title" of an initiative petition was deficient under a city charter because it "[did] not fully capture every facet of the proposed ordinance"; the city charter "require[d] a title, not a summary").

**{¶ 27}** Given the different meanings of "summary" and "title," we need go no further than the plain text of R.C. 3519.01(A) to determine the scope of the attorney general's role: the attorney general "shall conduct an examination of" only the *summary* of the proposed amendment. If the attorney general's examination duty extended to the "title" of a proposed amendment, the General Assembly would have expressly stated as much in R.C. 3519.01(A).

**{¶ 28}** The attorney general's textual arguments to the contrary are unpersuasive. He argues that R.C. 3519.01(A) contemplates the submission of two items to the attorney general for his "fair and truthful" review: (1) the text of the proposed constitutional amendment and (2) a summary of it. The title, then, the attorney general insists, "must necessarily be part of" the summary.

**{¶ 29}** The first problem with the attorney general's argument is that it adds words to the statutory language. R.C. 3519.01(A) states: "Whoever seeks to propose a law or constitutional amendment by initiative petition shall, by a written petition signed by one thousand qualified electors, submit the proposed law or constitutional amendment and a summary of it to the attorney general for examination." To accept the attorney general's argument would require us to read R.C. 3519.01(A) as saying that whoever seeks to propose a constitutional amendment shall submit *only* the proposed amendment and a summary—and nothing else. But this is not what the statute says. The summary and the text of the amendment are mandatory but not exclusive.

**{¶ 30}** The second problem with the attorney general's argument is that it requires reading R.C. 3519.01(A) in isolation without considering the rest of the statutory scheme governing the initiative-petition process. When construing statutes relating to the same subject matter, a court will "consider them together to determine the General Assembly's intent." *State v. South*, 2015-Ohio-3930, ¶ 8. And in this case, the statutory scheme related to initiative petitions differentiates between a "summary" and a "title."

**{¶ 31}** Relevant here is R.C. 3519.05(A), which specifies the requirements for an initiative petition that is presented to citizens for signature after the ballot board and the attorney general have performed their petition-certification functions. That statute provides:

> If the measure to be submitted proposes a constitutional amendment, the heading of each part of the petition shall be prepared in the following form, and printed in capital letters in type of the approximate size set forth:
>
> "INITIATIVE PETITION
>
> Amendment to the Constitution
>
> Proposed by Initiative Petition
>
> To be submitted directly to the electors"
>
> "Amendment" printed in fourteen-point boldface type shall precede the *title*, which shall be briefly expressed and printed *in eight-point type*. The *summary* shall then be set forth printed *in ten-point type*, and then *shall follow the certification of the attorney general*, under proper date, which shall also be printed in ten-point type. The petition shall then set forth the names and addresses of the committee of not less than three nor more than five to represent the petitioners in all matters relating to the petition or its circulation.

(Emphasis added.) R.C. 3519.05(A). Thus, in prescribing the form for initiative petitions, the General Assembly differentiated between a "title" and a "summary," prescribing different requirements for each when they appear on an initiative petition. The attorney general's certification is required to appear below the summary and in the same font size as the summary. *Id.* In contrast, the title is set apart from the summary, appearing above it and in smaller type. *Id.* Moreover, the

form of the petition prescribed by the statute requires that the attorney general's certification follow the text *of the summary*, but it does not similarly prescribe that the attorney general's certification follow the title. Thus, the structure and content of the petition form suggests that the attorney general reviews the contents of only the summary.

**{¶ 32}** The attorney general contends that R.C. 3519.05 is irrelevant to the scope of his certification duty under R.C. 3519.01(A) because the two statutes "pertain to different parts of the petition process." Whereas R.C. 3519.01 describes the initial phase of the petition process, the attorney general argues, R.C. 3519.05 "outlines the formal requirements for petitions during the subsequent phase, wherein petitioners gather the signatures necessary to place the measure on the ballot." Based on that distinction, the attorney general surmises that R.C. 3519.05 has no impact on the meaning of R.C. 3519.01(A).

**{¶ 33}** We find the attorney general's argument unpersuasive. The General Assembly is presumed "to know the meaning of words, to have used the words of a statute advisedly and to have expressed legislative intent by the use of the words found in the statute; that nothing may be read into a statute which is not within the manifest intention of the Legislature as gathered from the act itself." *Wachendorf v. Shaver*, 149 Ohio St. 231, 237 (1948). Applying that principle to the statutory scheme at issue here, we see that within the same chapter of the Revised Code, the General Assembly used the word "title" in one statute but not in another. Namely, in R.C. 3519.05(A), the General Assembly distinguished between a "summary" and a "title," yet in R.C. 3519.01(A), it specified that the attorney general's duty to certify extended to only the "summary," not to the title. "[I]f the General Assembly could have used a particular word in a statute but did not, [this court] will not add that word by judicial fiat." *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 2014-Ohio-5511, ¶ 26. Accordingly, under the plain language of R.C. 3519.01(A), the

attorney general's certification authority extends to the *summary* of a proposed constitutional amendment, not to the title of it.

{¶ 34} Under R.C. 3519.01(A), the attorney general's certification authority does not extend to the title of a proposed amendment that appears on a preliminary initiative petition submitted under that provision. Accordingly, in this case, the attorney general exceeded his statutory authority by reviewing the title of the relators' proposed constitutional amendment, and he did not perform his duty under R.C. 3501.19(A) to "conduct an examination of the summary."

### B. Attorney General's Interpretation and Statutory-Purpose Argument

{¶ 35} The attorney general also argues that this court's interpretation of R.C. 3519.01(A) "should be grounded in that statute's purpose," which is to "ensur[e] that potential petition signers are not misled." If the attorney general lacks the authority to review the title as part of his duty under R.C. 3519.01(A), he argues, then proponents of a constitutional amendment "are free to give . . . any misleading title they choose, and that tile is unreviewable." As an example, the attorney general asserts that relators "could go door-to-door presenting a petition titled 'Every Ohioan to receive one million dollars if amendment passes' " even if that is not true. He asserts that if this were the law, it would be inconsistent with Ohio's long history of recognizing the attorney general's "important role" in the initiative-petition process.

{¶ 36} The attorney general raises a significant point that if a "title" is not reviewable as part of the "summary" under R.C. 3519.01(A), then potentially misleading titles could be presented to potential signers of the petition. But his argument asks this court to expand the scope of the attorney general's "fair and truthful" examination beyond what the General Assembly enacted. Considerations like those raised by the attorney general are more properly addressed to the legislature. *See Johnson v. Montgomery*, 2017-Ohio-7445, ¶ 15.

**{¶ 37}** The inclusion of the word "title" in R.C. 3519.05(A) shows that the General Assembly knows how to use the word "title" when it intends to do so. A "title" is not the same thing as a "summary," and the current statute unambiguously tasks the attorney general with examining only the latter.

### C. Remedy

**{¶ 38}** Relators seek a writ of mandamus that would compel the attorney general "to certify the proposed constitutional amendment's summary as a fair and truthful statement of the proposed amendment and forward the petition to the Ballot Board" under R.C. 3519.01. Relators contend that the attorney general "relinquished any further authority over the summary" by failing to perform his mandatory duty within the ten-day period specified in R.C. 3519.01(A). They argue that giving the attorney general another opportunity to review the summary would frustrate the ten-day deadline in the statute, which, relators say, was enacted to prevent State officials from impeding the petition process. *See Schaller v. Rogers*, 2008-Ohio-4464, ¶ 51 (10th Dist.) (noting that the enactment of the ten-day provision limits "the attorney general's ability to impede the process").

**{¶ 39}** Relators' requested relief is not appropriate. For the reasons explained above, the attorney general erred in refusing to certify the proposed constitutional amendment based solely on his conclusion that the title was invalid. However, the attorney general has made clear that he did not review the summary to determine whether it fairly and truthfully summarizes the proposed amendment; he reviewed only the title. Under R.C. 3519.01(A), there can be no certification until the attorney general has reviewed the summary and determined that it is a fair and truthful statement of the proposed amendment. The statute does not allow us to order the attorney general to certify a summary that he has not examined.

**{¶ 40}** Relators rely on our decision in *Barren*, 51 Ohio St.2d 169, in requesting their preferred relief, but that case does not help them. In *Barren*, a referendum petition and summary were presented to the attorney general for

16

certification under R.C. 3519.01. *Barren* at 169, 170. The attorney general refused to certify the summary on the basis that the matters addressed in the petition were not subject to referendum. *Id.* at 171. This court rejected the attorney general's rationale and granted a writ of mandamus directing him to certify the summary as a fair and truthful statement of the proposed measure. *Id.* Since the attorney general's only reason for refusing certification was his opinion that the measure was not subject to referendum, this court found it "implicit that, in [the attorney general's] opinion, the summary meets the requirement of being a fair and truthful statement of the matter to be referred." *Id.*

{¶ 41} This case presents a different issue and evidentiary record. Unlike in *Barren*, the attorney general in this case has stated unequivocally that he has *not* reviewed the petition summary for its fairness and truthfulness under R.C. 3519.01; instead, here he rejected the petition solely because he found the title defective. Thus, he has not yet assessed the summary itself. In contrast, the attorney general in *Barren* had reviewed the summary and had refused to certify it based on a reason that was not part of his "honest and impartial evaluation" of the summary. *Id.* at 170. Unlike in *Barren*, we cannot say here that the attorney general has implicitly determined that relators' summary is fair and truthful, because he has not reviewed it for that purpose.

{¶ 42} A proper remedy here is a limited writ of mandamus ordering the attorney general to perform his statutory certification responsibility. Since the attorney general does not appear to have reviewed relators' summary for its fairness and truthfulness under R.C. 3519.01, we order him to do so. *See, e.g.*, *State ex rel. Dunn v. Plain Local School Dist. Bd. of Edn.*, 2020-Ohio-339, ¶ 23, 26 (granting a limited writ of mandamus ordering performance of "duties required by law for the potential placement of the proposal" on the ballot rather than the requested writ seeking outright placement on ballot).

## III. CONCLUSION

{¶ 43} For the foregoing reasons, we grant a limited writ of mandamus ordering the attorney general to, within ten days, examine the summary of relators' proposed constitutional amendment, determine whether the summary is a fair and truthful statement of the proposed amendment, and, if so, certify and forward the submitted petition to the Ohio Ballot Board.

Limited writ granted.

_____

McTigue & Colombo, L.L.C., and Donald J. McTigue; and Elias Law Group L.L.P., Ben Stafford, Jyoti Jasrasaria, and Qizhou Ge, for relators.

Dave Yost, Attorney General, and Byers B. Emmerling, Julie M. Pfeiffer, Ann Yackshaw, and Stephen P. Tabatowski, Assistant Attorneys General, for respondent.

_____